NOT DESIGNATED FOR PUBLICATION

No. 114,215

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
A.P., DOB XX/XX/2003, a female;
A.P., DOB XX/XX/2006, a male; and
M.W. Jr., DOB XX/XX/2011, a male.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed May 27, 2016.
Affirmed.

*Raymond E. Probst Jr.*, of Probst Law Firm P.A., of Kansas City, for appellant.

*Ashley Hutton*, assistant district attorney, and *Jerome A. Gorman*, district attorney, for appellee.

Before HILL, P.J., PIERRON and GARDNER, JJ.

*Per Curiam*: V.W. is the natural mother of Ad.P., a female; Am.P., a male; and M.W., Jr., a male. She appeals the district court's termination of her parental rights. After reviewing the record on appeal, it appears that substantial competent evidence supports the district court's decision.

In July 2013, Ad.P. and an older sister who is not involved in this appeal ran away from Mother's home, leaving behind the two younger siblings. They went to their grandmother's home, and she immediately called an ambulance with concerns about what she believed to be cigarette burns on the children. The injuries were later determined to be infected bed bug bites. While at the hospital, the girls told the police about truancy, domestic violence, and physical abuse from M.W., Mother's husband and M.W., Jr.'s

1

father. The girls also reported that both Mother and M.W. used K2 and marijuana regularly and that they were incapable of parenting while they were high.

After hearing from the girls, a social worker visited Mother and the younger children at home. The home had very little furniture and not much food. Mother did not know that the girls had run away until the police told her. She admitted to using K2 and marijuana but claimed that she was able to parent while under the influence. She knew that the children had bug bites but did not think that any medical attention was required.

Based on this information, the State filed petitions seeking to have all of the children declared to be in need of care. A temporary order of custody was put in place and the children were placed in the custody of the Department of Children and Families (DCF). Mother stipulated that the children were in need of care.

After her stipulation was entered, Mother was given reintegration tasks which included maintaining stable and appropriate housing, maintaining stable income, regular reports to the court services officer (CSO), supervised visitation, random and negative UAs, and mental health and domestic violence assessments. As the case progressed, the reintegration tasks were amended to remove visitation between the two oldest children and Mother.

The State filed a motion to terminate Mother's parental rights in November 2014 and amended that motion in April 2015. In the amended motion, the State claimed that Mother failed to provide evidence of stable income. It was also alleged that although Mother completed several tasks, she failed to make any progress or gain any "insight into her role in keeping her children safe."

The district court held an evidentiary hearing to hear testimony from witnesses and arguments from counsel. After considering that evidence, the district court found

2

substantial competent evidence that Mother was unfit under K.S.A. 2015 Supp. 38-2269(b)(5), (b)(7), (b)(8), and (c)(3). After determining that her unfitness was unlikely to change in the foreseeable future, the district court terminated Mother's parental rights. This timely appeal follows.

On appeal, Mother contends that there was insufficient evidence to support the district court's finding that she was unfit and that her unfitness was unlikely to change in the foreseeable future. Mother believes that she was "in a position where she would be able to comply with her court orders" and notes that she completed many of her reintegration tasks.

When an appellate court reviews a district court's determination that a child is in need of care, it should consider whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have made those findings by clear and convincing evidence. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, the appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *B.D.-Y.*, 286 Kan. at 705.

A court may terminate parental rights when a child has been adjudicated to be in need of care and after the court finds by clear and convincing evidence that the parent is unfit and that unfitness is unlikely to change in the foreseeable future. K.S.A. 2015 Supp. 38-2269(a). The proof of any one of the factors listed in K.S.A. 2015 Supp. 38-2269(b) and (c) may, by itself, establish grounds for the termination of parental rights. K.S.A. 2015 Supp. 38-2269(f).

The primary concern raised at the termination hearing involved Ad.P.'s claims of sexual abuse. Mother consistently denied that Ad.P. was ever sexually abused by M.W. When asked if this denial was in Ad.P.'s best interests, Mother said there "wasn't no

3

proof" of any abuse. She also testified that any case worker who described the abuse was lying. Mother theorized that Ad.P. lied because she was prompted by an older sister to do so. Mother claimed that she was told Ad.P. recanted the abuse. Mother also claimed she received a letter from Ad.P. in which Ad.P. recanted the abuse and asked to come home. Ad.P. did write a letter, but she told her social worker that she did so in hopes of being able to return home.

Mother acknowledged that Ad.P. had been sexually abused by a relative in the past. After the abuse was discovered, the relative was sent out of town and no report was made to the authorities. Ad.P. was blamed for the abuse because she did not scream while it was happening.

Ad.P. gave a very specific description of the abuse to her therapist, which has always been consistent, but Mother claimed she had never been told the specifics. Ad.P.'s therapist testified that Ad.P. really wanted "her mother to accept that she was sexually abused" so that they could work through it. Mother's unwillingness to do so left Ad.P. ready to move on from Mother's home. In fact, at one court hearing Ad.P. was "hysterical at the idea of seeing" Mother.

Mother testified that even though M.W. was the father of her unborn child, she had no relationship with him and did not see him. Mother testified that she had no plans to ever reconcile with M.W. This conflicted with Mother's statements to case workers that she had no plans to divorce M.W. In August 2014, during a visit, there was a man at the home who Mother referred to as "Eric." Case workers later confirmed that the man was M.W. Mother denied that there was ever a man at her home.

In addition to the concerns involving Ad.P., Mother is unemployed and has no income. She claimed she was eligible for rehire at her job. However, her former employer

4

provided a form showing that in their view, Mother had abandoned her job and was not eligible for rehire.

Mother claims that she has appropriate housing. She believed it was stable although admitted that she was not paying rent because the landlord understood her "situation." Mother does not have a valid lease.

Mother failed to do timely check-ins with her CSO. She claimed the CSO told her that she no longer needed to check in. The CSO testified that Mother told her that she was moving to Missouri.

Mother admitted missing two therapy sessions due to her pregnancy. She asked for more therapy, especially with Ad.P. The social worker described Mother's therapy as "very inconsistent." And Mother discontinued family therapy after Ad.P. described the sexual abuse. The therapist estimated it would take 10 to 15 sessions just to address Ad.P.'s claims of sexual abuse.

Mother claimed she was never asked to provide a UA, or, alternately, that she gave every UA that was requested. It took Mother approximately 1 year to complete her drug and alcohol evaluation. A witness testified about multiple occasions where Mother was a no-call or no-show at requested UAs.

Mother was not allowed to see her children outside of supervised visits. She denied missing any visits. She testified that she thought she needed more time with her children, especially with Ad.P. There were concerns about Mother's behavior during the visits, including the fact that Mother talked with the children about the case.

At the end of the first day of the termination hearing, Mother became upset and ended up receiving medical attention. At the beginning of the next day of testimony, the

5

district court related that an EMT provided the opinion that Mother was "saying the right things" to be transported to the hospital even though there was nothing wrong with her.

Although Mother completed the Safe Kids program, the consensus was that Mother only put in "minimal participation" and did not make much progress. This was especially true given Mother's unwillingness to acknowledge that the sexual abuse happened. There were concerns that Mother would be unable to keep her children safe.

Regina Singleton, a therapist with the Safe Kids program testified that there were no other services that Mother could have received because she was unwilling to acknowledge any wrongdoing. In fact, Mother did not believe that the children should ever have been removed from her care. When given a correction, Mother said that she "knew how to parent" and that any concerns were unwarranted. For this reason, Singleton did not think that Mother could be an appropriate placement for the children at any time in the foreseeable future. The CSO characterized Mother's compliance as "[p]oor" and gave the opinion that Mother was dishonest. She believed that termination was appropriate.

When ruling from the bench, the district court made several findings regarding Mother's credibility. But the court's decision to terminate Mother's parental rights seemed to center on Mother's inability to protect her children from harm, especially Ad.P. from M.W., and, more importantly, on what the court deemed Mother's "outrageous[]" emotional abuse of Ad.P. And beyond the emotional abuse, the district court found that Mother demonstrated a "total lack of effort" to change her circumstances, despite a reasonable reintegration plan.

The district court's findings are supported by clear and convincing evidence. The district court correctly found that Mother's refusal to admit to Ad.P.'s sexual abuse kept her from making any progress in this case. Since Mother could not even acknowledge

that the abuse occurred, she could not begin to take steps to help Ad.P. recover or understand how her behavior should change in the future. To the contrary, there was ample testimony that Mother refused to listen to suggestions about her parenting and did not understand why the children were ever taken into custody. This, combined with Mother's minimal efforts towards completing reintegration tasks, provides clear and convincing evidence that Mother is unfit under K.S.A. 2015 Supp. 38-2269(b)(7) and (b)(8). There was also undisputed testimony that Mother's home would not be an appropriate placement in the foreseeable future.

Given the testimony at the termination hearing, the district court did not abuse its discretion when it terminated Mother's parental rights.

Affirmed.